**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JANE NORTON, Individually and for Others Similarly Situated | Case No. 4:25-cv-827 |
| v. | Jury Trial Demanded |
| MIDWEST GERIATRIC MANAGEMENT, LLC d/b/a MGM HEALTHCARE | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Jane Norton (Norton) brings this collective action to recover unpaid wages and other damages from Midwest Geriatric Management, LLC d/b/a MGM Healthcare (MGM Healthcare).

2. MGM Healthcare employs Norton as one of its Patient Care Employees (defined below).

3. Like the other Patient Care Employees, Norton regularly works more than 40 hours a week.

4. But MGM Healthcare does not pay them at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked after 40 in a week.

5. Instead, MGM Healthcare pays Norton and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, retention bonuses, critical need/crisis bonuses, and performance bonuses, that it fails to include in their regular rates of pay for overtime purposes (MGM Healthcare's "bonus pay scheme").

6. MGM Healthcare's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Norton and the other Patient Care Employees of overtime wages at the required rate—based on all remuneration—for all overtime hours worked.

1

## JURISDICTION & VENUE

7.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.  This Court has general personal jurisdiction over MGM Healthcare because MGM Healthcare is a domestic limited liability company.

9.  Venue is proper because MGM Healthcare maintains its principal place of business in St. Louis, Missouri, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

10. Norton is a Registered Nurse (RN) in Bettendorf, Iowa.

11. MGM Healthcare hired Norton in approximately February 2024.

12. MGM Healthcare always classified Norton as non-exempt and paid her by the hour.

13. MGM Healthcare subjected Norton to its bonus pay scheme consistently.

14. Norton brings this action on behalf of herself and other similarly situated MGM Healthcare employees who were subject to its bonus pay scheme.

15. The putative collective of similarly situated employees is defined as:

> **All hourly MGM Healthcare employees who received a bonus that was not included in their regular rate of pay for overtime purposes at any time during the past 3 years through final judgment ("Patient Care Employees").**

16. MGM Healthcare is a Missouri limited liability company headquartered in St. Louis, Missouri.

17. MGM Healthcare may be served through its registered agent: **Michael Winter, 477 North Lindbergh Boulevard, Suite 310, St. Louis, Missouri 63141**, or wherever he may be found.

## FLSA COVERAGE

18. At all relevant times, MGM Healthcare was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

2

19. At all relevant times, MGM Healthcare was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

20. At all relevant times, MGM Healthcare was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

21. At all relevant times, MGM Healthcare had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

22. At all relevant times, Norton and the other Patient Care Employees were MGM Healthcare's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

23. At all relevant times, Norton and the other Patient Care Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

24. MGM operates independent living facilities, long-term care facilities, assisted living facilities, and skilled nursing facilities across Iowa, Missouri, and Oklahoma.

25. To meet its business objectives, MGM Healthcare employs workers, including Norton and the other Patient Care Employees, to care for its patients and residents.

26. For example, MGM Healthcare has employed Norton as an RN in its Bettendorf, Iowa facility since approximately February 2024.

27. As an RN, Norton's job duties include admitting new residents, reviewing lab work, ensuring certified nursing assistants provide appropriate care, passing medications to residents, notifying doctors of issues and following up with doctors, and responding to codes and emergencies.

28. Norton regularly works more than 40 hours a week.

29. Indeed, Norton typically works 3 12-hour shifts and an 8-hour shift "on the clock" each week (44 hours a workweek).

30. Likewise, the other Patient Care Employees typically work approximately 40 to 60 hours a workweek.

31. Norton and the other Patient Care Employees are required to report their "on the clock" hours worked via MGM Healthcare's timekeeping system.

32. But MGM Healthcare does not pay its Patient Care Employees at the required overtime rate for hours worked after 40 in a workweek.

33. Instead, MGM Healthcare pays Norton and the other Patient Care Employees under its bonus pay scheme.

34. Specifically, MGM Healthcare pays non-discretionary bonuses, including sign-on bonuses, retention bonuses, critical need/crisis bonuses, and performance bonuses, but excludes those bonuses from its Patient Care Employees' regular rates of pay for overtime purposes.

35. For example, MGM Healthcare paid Norton a "one-time sign-on bonus of $12,000" over the course of a "retention period" defined by MGM Healthcare:

> A one-time sign-on bonus of $12,000.00 is provided. Sign-on bonuses are paid in increments during retention period. Please refer to the sign-on bonus agreement.

36. But MGM Healthcare did not include this bonus in Norton's regular rate of pay for overtime purposes.

37. Thus, MGM Healthcare failed to pay Norton at least 1.5 times her regular rate of pay—based on all remuneration—for all hours she worked after 40 each workweek.

38. While exact job titles and job duties may differ, the Patient Care Employees are subject to the same or similar pay practice—MGM Healthcare's bonus pay scheme.

4

39. Thus, like Norton, under its bonus pay scheme, MGM Healthcare does not pay the other Patient Care Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 a workweek, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

40. Norton brings her claims as a collective action under Section 216(b) of the FLSA.

41. Like Norton, the other Patient Care Employees are victimized by MGM Healthcare's bonus pay scheme.

42. Other Patient Care Employees worked with Norton and indicated they were paid in the same or similar manner under MGM Healthcare's bonus pay scheme.

43. Based on her experience with MGM Healthcare, Norton is aware MGM Healthcare's bonus pay scheme was imposed on other Patient Care Employees.

44. The Patient Care Employees are similarly situated in the most relevant respects.

45. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

46. Therefore, the specific job titles or job locations of the Patient Care Employees do not prevent collective treatment.

47. Rather, MGM Healthcare's bonus pay scheme renders Norton and the other Patient Care Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

48. MGM Healthcare's records reflect the number of hours the Patient Care Employees recorded working "on the clock" each week.

49. MGM Healthcare's records also show it paid the Patient Care Employees non-discretionary bonuses.

5

50. And MGM Healthcare's records show it failed to include non-discretionary bonuses in their regular rates of pay for the purpose of calculating their overtime rates of pay.

51. The back wages owed to Norton and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

52. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to MGM Healthcare's records, and there is no detraction from the common nucleus of liability facts.

53. Therefore, the issue of damages does not preclude collective treatment.

54. Norton's experiences are therefore typical of the experiences of the other Patient Care Employees.

55. Norton has no interest contrary to, or in conflict with, the other Patient Care Employees that would prevent collective treatment.

56. Like each Patient Care Employee, Norton has an interest in obtaining the unpaid wages owed under federal law.

57. Norton and her counsel will fairly and adequately protect the interests of the Patient Care Employees.

58. Norton retained counsel with significant experience in handling complex collective action litigation.

59. Absent this collective action, many Patient Care Employees will not obtain redress for their injuries, and MGM Healthcare will reap the unjust benefits of violating the FLSA.

60. Further, even if some of the Patient Care Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

61. Indeed, the multiplicity of actions would create hardship to the Patient Care Employees, the Court, and MGM Healthcare.

62. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

63. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

64. Among the common questions of law and fact are:

    a. Did MGM Healthcare pay bonuses to the Patient Care Employees;

    b. Were MGM Healthcare's bonuses non-discretionary;

    c. Did MGM Healthcare exclude non-discretionary bonuses when calculating the Patient Care Employees' regular rates of pay;

    d. Did MGM Healthcare fail to pay the Patient Care Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

    e. Was MGM Healthcare's failure to pay overtime at the required rate based on decisions made in good faith and with reasonable grounds for believing it complied with the FLSA; and

    f. Were MGM Healthcare's violations were willful?

65. As part of its regular business practices, MGM Healthcare intentionally, willfully, and repeatedly violated the FLSA with respect to Norton and the other Patient Care Employees.

66. MGM Healthcare's bonus pay scheme deprived Norton and the other Patient Care Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal law.

67. There are many similarly situated Patient Care Employees who have been denied overtime pay at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

7

68. The Patient Care Employees are known to MGM Healthcare, are readily identifiable, and can be located through MGM Healthcare's business and personnel records.

## MGM Healthcare's Violations Were Willful

69. MGM Healthcare knew it employed Norton and the other Patient Care Employees.

70. MGM Healthcare knew it was subject to the FLSA's overtime provisions.

71. MGM Healthcare knew the FLSA required it to pay non-exempt employees, including Norton and the other Patient Care Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

72. MGM Healthcare knew Norton and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours worked to MGM Healthcare via its timekeeping system.

73. MGM Healthcare knew Norton and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

74. MGM Healthcare knew it paid Norton and the other Patient Care Employees non-discretionary bonuses.

75. MGM Healthcare intentionally excluded these non-discretionary bonuses from its Patient Care Employees' regular rates of pay for overtime purposes.

76. And MGM Healthcare knew the FLSA required it to pay Norton and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

77. MGM Healthcare's failure to pay Norton and the other Patient Care Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

78. MGM Healthcare knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Norton and the other Patient Care Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

79. Norton brings her FLSA claim as a collective action on behalf of herself and the other Patient Care Employees pursuant to 29 U.S.C. § 216(b).

80. MGM Healthcare violated, and is violating, the FLSA by employing non-exempt employees such as Norton and the other Patient Care Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

81. MGM Healthcare's unlawful conduct harmed Norton and the other Patient Care Employees by depriving them of the overtime wages they are owed.

82. Accordingly, MGM Healthcare owes Norton and the other Patient Care Employees the difference between the wages actually paid and the required overtime wages actually earned.

83. Because MGM Healthcare knew or showed reckless disregard for whether its bonus pay scheme violated the FLSA, MGM Healthcare owes Norton and the other Patient Care Employees these wages for at least the past 3 years.

84. MGM Healthcare is also liable to Norton and the other Patient Care Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

85. Finally, Norton and the other Patient Care Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

86. Norton demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Norton, individually and on behalf of the Patient Care Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice to all Patient Care Employees advising them of their right to join this action by filing individual Consents to Join;

    b.    An Order pursuant to Section 16(b) of the FLSA finding MGM Healthcare liable for unpaid overtime wages due to its Patient Care Employees, plus liquidated damages in amount equal to their unpaid overtime wages;

    c.    Judgment awarding the Patient Care Employees all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Dated: June 5, 2025

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: /s/ *Rex Burch*
Richard J. (Rex) Burch
TX Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR NORTON & THE PATIENT CARE EMPLOYEES**